# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| YVETTE OWENS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CRESTWYN HEALTH GROUP, LLC, d/b/a CRESTWYN BEHAVIORAL HEALTH, and ACADIA HEALTHCARE COMPANY, INC.,<br><br>Defendants. | Case No. 2:24-CV-2853<br><br>(Removed from Chancery Court for the Thirteenth Judicial District, Shelby County, Tennessee, Case No. CH-24-1319)<br><br>**DEFENDANTS' NOTICE OF REMOVAL**<br><br>Action Filed: September 27, 2024<br>Complaint Served: October 3, 2024 & October 8, 2024 |

PLEASE TAKE NOTICE that in accordance with 28 U.S.C. §§ 1332(d), 1441, and 1446, Defendants Crestwyn Health Group, LLC ("Crestwyn") and Acadia Healthcare Company, Inc. ("Acadia") (collectively "Defendants") hereby remove this putative class action filed by Plaintiff Yvette Owens ("Plaintiff") in the Chancery Court for the Thirteenth Judicial District, Shelby County, Tennessee, Case No. CH-24-1319 (the "State Court Action") to the United States District Court for the Western District of Tennessee, Western Division.

## JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over this case under 28 U.S.C. § 1332, and removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

2. This Court is in the judicial district and division embracing the place where the State Court Action was brought and is pending. *See* 28 U.S.C. § 123(c)(2). Thus, this Court is the proper district court to which this case should be removed. 28 U.S.C. §§ 1441(a) and 1446(a).

## NATURE AND TIMELINESS OF REMOVED ACTION

3. On September 27, 2024, Plaintiff, on behalf of herself and, purportedly, on behalf of all others similarly situated, filed a "Class Action Complaint for Damages and Injunctive Relief" ("Complaint") against Defendants in the State Court Action. Plaintiff filed her Complaint as a putative class action. *See* Compl. ¶ 86 (defining putative class on whose behalf Plaintiff purports to bring the State Court Action). A true and correct copy of the Complaint is attached to this Notice of Removal as **Exhibit A**.

4. Plaintiff alleges that between January 11, 2024 and January 15, 2024, "Defendant"[1] was the victim of a data security incident where a certain personal or protected health information of Defendant's patients, including Plaintiff, was impacted (the "Data Incident"). Compl. at ¶¶ 1-4.

5. Plaintiff alleges that the Data Incident occurred because "Defendant failed to undertake adequate measures to safeguard the Private Information of Plaintiff and the proposed Class Members, including failing to implement industry standards for data security, and failing to properly train employees, failing to implement and enforce multi-factor on its email/remote access systems, and failing to implement a policy to prevent the transfer of unencrypted private information in an email system not equipped to protect such confidential information of the highest sensitivity." *Id.* at ¶ 8.

6. Plaintiff further alleges that she received a notice of the Data Incident on July 16, 2024. *Id.* at ¶ 10.

7. Plaintiff alleges that she, and a class of similarly situated individuals were injured as a result of the Data Incident. *Id.* at ¶ 12. Specifically, Plaintiff alleges that she and the putative

---

[1] The Complaint defines Defendants collectively as "Defendant" without distinguishing which allegations and claims are directed at which Defendant.

class "have suffered a gross invasion of their privacy and are now exposed to a substantial increase in identity theft and financial fraud for years to come, for which Defendant must provide compensation and significantly more substantial credit monitoring and identity theft protection services." *Id.*

8. Additionally, Plaintiff alleges generic injuries, such as "monetary losses, lost time, anxiety, and emotional distress." *Id.* at ¶ 76. Plaintiff contends that she and the putative class have suffered or will suffer:

> a. The loss of the opportunity to control how Private Information is used; b. The diminution in value of their Private Information; c. The compromise and continuing publication of their Private Information; d. Out-of-pocket expenses associated with the prevention, detection, recovery, and remediation from identity theft or fraud; e. Lost opportunity costs and lost wages associated with the time and effort expended addressing and trying to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud; f. Unauthorized use of stolen Private Information; and g. The continued risk to their Private Information, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the Private Information in its possession.

*Id.*

9. The Complaint also alleges that the Data Incident "has placed Plaintiff and the proposed Class Members at a substantially increased risk of fraud and identity theft." *Id.* at ¶ 77.

10. On behalf of herself, and purportedly on behalf of a class defined as "[a]ll persons whose Private Information was compromised in the Data Breach and to whom Defendant sent a notification that their information was compromised in the Data Breach," Plaintiff asserts three causes of action: (1) negligence; (2) breach of contract; and (iii) invasion of privacy. *See* Compl. at ¶¶ 86, 92-125.

11. Plaintiff served copies of the Summons, Complaint, and other related documents on Defendant Crestwyn on October 3, 2024, and on Defendant Acadia on October 8, 2024.

Pursuant to 28 U.S.C. §1446(a), true and correct copies of all documents filed in the State Court Action are collectively attached hereto as **Exhibit B**.

12. This Notice of Removal is timely because Defendants filed it within thirty days of being served with the Complaint. *See* U.S.C. § 1446(b) (notice of removal shall be filed within 30 days of service); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (removal period begins when defendant is served with complaint); see also Fed. R. Civ. P. 6(a) (extending deadlines that fall on weekend days or holidays to next business day).

## CAFA JURISDICTION

13. <u>Basis of Original Jurisdiction:</u> This Court has original jurisdiction over this action under CAFA. Section 1332(d) provides that a district court shall have original jurisdiction over a class action with 100 or more putative class members, in which the matter in controversy, in the aggregate, exceeds the sum or value of $5 million. 28 U.S.C. § 1332(d). Section 1332(d) further provides that, for CAFA to apply, a member of the putative class must be a citizen of a state different from any defendant.

14. As set forth further below, pursuant to 28 U.S.C. §§ 1332(d) and 1441(a), Defendants may remove the State Court Action to federal court under CAFA because: (1) this action is pled as a class action; (2) the putative class includes more than 100 members; (3) unnamed members of the putative class are citizens of a state different than that of Defendants; and (4) the matter in controversy, in the aggregate, exceeds the sum or value of $5 million exclusive of interest and costs.

## THIS ACTION IS PLED AS A CLASS ACTION

15.     CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative person as a class action." 28 U.S.C. § 1332(d)(1)(B).

16.     The Complaint alleges that Plaintiff "individually, and on behalf of all others similarly situated . . ., brings this Class Action Complaint" against Defendants and seeks to certify a class of "[a]ll persons whose Private Information was compromised in the Data Breach and to whom Defendant sent a notification that their information was compromised in the Data Breach." *Id.* at Introductory Paragraph, ¶ 86. Because Tennessee Rule of Civil Procedure 23.01 is substantially similar to class actions brought pursuant to Federal Rule of Civil Procedure 23, the first CAFA requirement is satisfied. *See Rogers v. Adventure House LLC*, 617 S.W.3d 542, 555 (Tenn. Ct. App. 2020) ("Our Supreme Court has previously determined that because of the identical language in our Rule 23 and in Rule 23 of the Federal Rules of Civil Procedure that federal authority is persuasive." (internal quotation marks and citation omitted)).

## THE PUTATIVE CLASS INCLUDES AT LEAST 100 MEMBERS

17.     Plaintiff alleges that the "proposed class" consists of "far too many to join in a single action, and represents at least *hundreds* of people according to Defendant's filings with the U.S. Dep't of Health and Human Services." Compl. ¶ 90(a) (emphasis added). Plaintiff further pleads that the Data Incident "resulted in the exposure of the Private Information of at least 500 individuals." *Id.* ¶ 3.

18.     To date, Defendants have mailed or caused to be mailed notification of the Data Incident to approximately 3,755 individuals in 20 states, including Tennessee.

19.     Thus, based on the above and as pled, the number of putative class members exceeds the statutorily required minimum of 100 individuals, and as such, the second CAFA requirement is satisfied.

## MINIMAL DIVERSITY OF CITIZENSHIP EXISTS

20.     Under 28 U.S.C. § 1332(d)(2)(A), "the district court shall have original jurisdiction" over a "class action in which . . . any [named or unnamed] member of a class of plaintiffs is a citizen of a State different from any defendant." *Accord Dean v. Draughons Junior Coll., Inc.*, No. 3:12-CV-0157, 2012 WL 2357492, at *3 (M.D. Tenn. June 20, 2012) (quoting 28 U.S.C. § 1332(d)(2)).

21.     <u>Plaintiff's Citizenship.</u> For diversity purposes, a party's citizenship is determined by their domicile. *See Prime Rate Premium Fin. Corp., Inc. v. Larson*, 930 F.3d 759, 765 (6th Cir. 2019) ("Citizenship instead turns on 'domicile.'"). Domicile "requires that a person *both* be present in a state *and* have 'the intention to make his home there indefinitely or the absence of an intention to make his home elsewhere.'" *Id.* (quoting *Stifel v. Hopkins*, 477 F.2d 1116, 1120 (6th Cir. 1973)) (emphasis in original). Plaintiff alleges that she is a citizen of Tennessee where she intends to remain. Compl. at ¶ 13.

22.     <u>Unnamed Class Members' Citizenship.</u> To establish minimal diversity, the Court should consider the citizenship of all class members, including putative class members, both named and unnamed. *See* 28 U.S.C. § 1332(d)(1)(D) ("[T]he term 'class members' means the persons (named or unnamed) who fall within the definition of the proposed . . . class"). Plaintiff alleges that her putative class is comprised of "[a]ll persons whose Private Information was compromised in the Data Breach and to whom Defendant sent a notification that their information was compromised in the Data Breach." Compl. at ¶ 86. As pled, Plaintiff's proposed "Class" is

6

geographically broader than her individual citizenship. *Compare* Compl. ¶ 13, *with* Compl. ¶ 86. Further, following the Data Incident, Defendants mailed notifications to approximately 3,755 individuals whose information may have been involved in the Data Incident to mailing addresses across 20 states, as well as provided website notice of the Data Incident.[2] As a result, at least one unnamed putative class member is a non-Tennessee citizen.

23. <u>Defendants' Citizenship.</u> Defendant Crestwyn is a limited liability company. Under 28 U.S.C. § 1332(d)(10), "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." Courts within the Sixth Circuit, including this Court, have concluded that a limited liability company is an unincorporated association and citizenship is determined pursuant to § 1332(d)(1) in the class action context. *See e.g., Eagles Nest, LLC v. Moy Toy, LLC*, No. 2:14-00010, 2014 WL 4655277, at *5 (M.D. Tenn. Sept. 16, 2014) ("For qualifying class actions . . . CAFA abrogates the traditional rule that an unincorporated association" "of which a limited liability company is one" "shares the citizenship of each of its members for diversity purposes." (alteration in original) (internal quotation marks and citation omitted)); *Bozung v. Christianbook, LLC*, No. 1:22-CV-304, 2023 WL 2385004, at *3 (W.D. Mich. Mar. 6, 2023), *amended*, No. 1:22-CV-304, 2023 WL 4540341 (W.D. Mich. July 14, 2023) ("A limited liability company is a type of unincorporated entity. Accordingly, the citizenship provision in § 1332(d)(10) for unincorporated entities in class actions applies to LLCs." (internal citation omitted)); *Ray v. Five Bros. Mortg. Co. Servs. & Securing, Inc.*, No. 7:18-CV-126-REW, 2019 WL 13212702, at *1 n.1 (E.D. Ky. Jan. 23, 2019) ("In the class action context, an LLC is deemed to be a citizen of the State where it has its principal

---

[2] *See Crestwyn Website,* Notice of Email Phishing Incident, *available at* https://www.crestwynbehavioral.com/wp-content/uploads/sites/143/2024/07/Crestwyn-Data-Security-Incident-Notice-7.16.24.pdf (last accessed Nov. 3, 2024).

place of business and the State under whose laws it is organized." (internal quotation marks and citations omitted)).

24. The Complaint does not allege where Crestwyn maintains its principal place of business or under which state's laws it is organized. *See Compl.* at ¶ 15. Instead, the Complaint pleads that Defendant Acadia "shares a principal office address with Defendant Crestwyn." *Id.* at 17. Based on the Tennessee Secretary of State website, Defendant Crestwyn is a Tennessee limited liability company with its principal place of business in Franklin, Tennessee. As such, Defendant Crestwyn is a Tennessee citizen for purposes of diversity jurisdiction.

25. Under 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of every State … by which it has been incorporated and of the State … where it has its principal place of business." As Plaintiff alleges, Defendant Acadia "is a corporation organized under the laws of Delaware with its principal place of business located at 6100 Tower Circle, Suite 1000, Franklin, Williamson County, Franklin, Tennessee 370076." Compl. at ¶ 16. Acadia is organized under the laws of Tennessee, with its principal place of business in Tennessee. As such, for diversity purposes, Acadia is a citizen of Tennessee and Delaware.

26. Minimal diversity of citizenship is established under CAFA because some unnamed class members are not citizens of Tennessee or Delaware, and as such, there is diversity of citizenship between Defendants and Plaintiff.

## THE AMOUNT IN CONTROVERSY EXCEEDS THE CAFA THRESHOLD[3]

27. Under CAFA, the amount in controversy must exceed $5 million, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2). In determining the amount in controversy in a putative class action, the claims of all putative class members are aggregated to determine if the amount in controversy is more than $5 million. *See Sevier Cnty. Sch. Fed. Credit Union v. Branch Banking & Tr. Co.*, No. 3:19-cv-138, 2019 WL 13292900, *3 (E.D. Tenn. June 12, 2019) (aggregating claims of class members to determine whether the amount in controversy exceeded $5 million).

28. Where, as here, a complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the jurisdictional amount-in-controversy is satisfied. 28 U.S.C. § 1446(c)(2)(B); *see also Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 404–05 (6th Cir. 2007). It is well established that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" to meet the amount-in-controversy requirement. *See e.g., Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *Muszik v. Berkshire Hathaway Homestate Ins. Co.*, No. 3:19-CV-5, 2019 WL 13196995, at *2 (E.D. Tenn. Feb. 21, 2019). The Sixth Circuit set out that "the amount in controversy should be determined from the perspective of the plaintiff, with a focus on the economic value of the rights [s]he seeks to protect." *See Woodmen of the World/Omaha Woodmen Life Ins. Soc. v. Scarbro*, 129 F. App'x 194, 196 (6th Cir. 2005) (unpublished) (internal quotation marks and citation omitted).

---

[3] The amounts set forth in this Notice of Removal are solely for purposes of establishing that the amount in controversy exceeds the $5 million threshold and are not intended to support, and cannot be construed as an admission, that Plaintiff can state a claim or is entitled to damages in any amount. Defendants deny liability, deny Plaintiff is entitled to recover any amount, and deny that a class can be properly certified in this action.

29. Plaintiff's Complaint contains no allegations that would support or suggest the amount in actual damages to which she and any member of the putative class are allegedly entitled for Defendants' alleged conduct. Nevertheless, Plaintiff's requested relief supports a finding that the amount in controversy, in the aggregate, exceeds the $5 million amount-in-controversy threshold. For example, even if not specifically requested in her Complaint, Plaintiff and putative class members could still recover any and all damages under Tennessee law to which they are legally entitled, including potentially general damages, such as compensatory damages, and/or punitive damages if they succeed on their claims.

30. <u>Damages.</u> The Complaint asserts causes of action for negligence, breach of contract, and invasion of privacy, *see* Compl. at ¶¶ 92-125, and seeks "compensatory, actual, exemplary, and punitive damages," and also seeks restitution damages. Compl. at Prayer.

31. The Complaint alleges that "Private Information is of great value to hackers and cybercriminals, and the data compromised in the Data Breach can be used for a variety of unlawful and nefarious purposes, including ransomware and fraudulent misuse, and sale on the Dark Web." Compl. at ¶ 43.

32. The Complaint further alleges that "Plaintiff's and the proposed Class Members' Private Information . . . is now being used or will imminently be used for fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale, causing widespread injury and damages . . . ." *Id.* at ¶ 75.

33. One of the articles cited and incorporated by reference in the Complaint, states that victims of identity theft can suffer "a median loss of $311." *See* https://www.creditcards.com/statistics/credit-card-security-id-theft-fraud-statistics-1276/ (cited in Compl. at ¶ 80 n. 21). If each of the approximately 3,755 individuals notified of the Data Incident

10

suffered the median loss, their total out-of-pocket damages would be $1,167,805 (3,755 individuals x $311 median loss). And that would be just one part of the alleged amount-in-controversy. Indeed, the Complaint demonstrates more.

34. <u>Mitigation Costs.</u> Additionally, the Complaint seeks equitable, declaratory, and injunctive relief "as is necessary to protect the interests of Plaintiff and the Class." Compl. at Prayer. The value of declaratory or injunctive relief is based upon the "value of the object of the litigation." *See Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 560 (6th Cir. 2010). Generally speaking, the amount in controversy requirement may be established by demonstrating the costs of complying with an injunction. *Id.*

35. For example, the Complaint pleads that Plaintiff and the putative class "have suffered a gross invasion of their privacy and are now exposed to a substantial increase in identity theft and financial fraud for years to come, for which Defendant must provide compensation and significantly more substantial credit monitoring and identity theft protection services." Compl. at ¶ 12. The Complaint pleads that that recommended mitigation for Plaintiff and putative class members' alleged harm can include setting up "an extended fraud alert that lasts for 7 years." *Id.* at ¶ 78. Focusing only on Plaintiff's allegations that she and the putative class have been harmed because they each now "must vigilantly monitor their credit, financial, and medical accounts for many *years to come*," *id.* at ¶ 84 (emphasis added), the $5 million amount-in-controversy is easily satisfied.

36. In data incident cases involving similar allegations, courts routinely hold that the costs of providing credit monitoring and identity theft protection services are properly included in the amount in controversy for purposes of CAFA's jurisdictional requirements. *See, e.g., Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 278 (S.D.N.Y. 2008) (concluding

that the amount of "credit monitoring costs for [plaintiff] and for the putative class for an indeterminate period beyond one year" "readily exceed[s] $5 million, exclusive of interest and costs"); *Porras v. Sprouts Farmers Mkt., LLC*, No. C16-1005, 2016 WL 4051265, at *3 (C.D. Cal. July 25, 2016) (three years of credit monitoring at only $15.95 per month for class of only 8,719 exceeded $5 million amount in controversy); *Abdale v. N. Shore-Long Island Jewish Health Sys., Inc.*, No. C13-1238, 2014 WL 2945741, at *6 (E.D.N.Y. June 30, 2014) (considering credit monitoring in amount in controversy exceeding $5 million); *Fielder v. Penn Station, Inc.*, No. C12-2166, 2013 WL 1869618, at *2 (N.D. Ohio May 3, 2013) (CAFA jurisdictional limit exceeded with just two years of credit monitoring alone).

37. Three main identity-protection agencies—LifeLock, Equifax, and Experian—advertise monthly rates for three-bureau credit-monitoring services for one adult ranging from $19.95 to $24.99 per person per month.[4] For example, LifeLock offers a product, titled Ultimate Plus, that provides credit monitoring with up to $3,000,000 in "stolen funds reimbursement" for $19.99 per month.[5] Equifax also offers a base product, titled Equifax Complete, that provides

---

[4] https://www.equifax.com/personal/products/credit/monitoring-product-comparison/ (last visited Oct. 29, 2024); https://www.experian.com/protection/compare-identity-theft-products/ (last visited Oct. 29, 2024); https://lifelock.norton.com/?om_sem_cid=hho_sem_sy:~en-us_lfl_llk_sch_max_nau_nfr_adw_nad_low:lsa_brand~c_kw0000748369&promocode=SEMLLBRLP&cq_src=google_ads&cq_cmp=21473426606&cq_net=x&gad_source=1&gclid=EAIaIQobChMIyM_7mfy0iQMVTxatBh31xzkcEAAYASAAEgLujvD_BwE&gclsrc=aw.ds#planschart (last visited Oct. 29, 2024).

[5] *See* https://lifelock.norton.com/offers?expid=SEM-B-MBG-LSA2&om_sem_cid=hho_sem_sy:~en-us_lfl_llk_sch_brn_exc_nfr_adw_dtp_low~c_kw0000594393&promocode=SEMLLBRLP&cq_src=google_ads&cq_cmp=1584904959&cq_net=g&gad_source=1&gclid=EAIaIQobChMIu8a-t_q0iQMVP4CDBx343yBvEAAYASAAEgIPtfD_BwE&gclsrc=aw.ds#planschart (last visited Oct. 29, 2024).

12

automatic fraud alerts, the Equifax credit report lock feature, identity restoration, and up to $500,000 for identity theft insurance for $9.95 per month.[6]

38. Taking the least expensive product—Equifax's $9.99 per month product—and multiplying the cost of seven years of the service—as noted by Plaintiff as the minimum necessary period—for all class members ($9.99/month x 84 months x 3,755 class members), the total cost would be $3,151,045 before taking into other factors to meet the $5 million amount-in-controversy. Taking LifeLock's Ultimate Plus plan and applying the same calculation ($19.99/month x 84 months x 3,755 class members), the total cost of $6,305,246 easily meets and exceeds the $5 million threshold.

39. <u>Punitive Damages.</u> Plaintiff also seeks punitive damages. *See* Compl. at Prayer. "When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered . . . unless it is apparent to a legal certainty that such cannot be recovered." *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001) (internal quotation marks and citation omitted); *see also Logan v. Christ*, No. 111CV01033JDBEGB, 2011 WL 13228007, at *2 (W.D. Tenn. May 11, 2011). Courts have approved punitive damage ratios of 4:1, punitive to compensatory. *See, e.g., Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23–24 (1991) (four times the amount of compensatory damages might be "close to the line" but did not "cross the line into the area of constitutional impropriety"); *Kidis v. Reid*, 976 F.3d 708, 715–16 (6th Cir. 2020) (reiterating that single digit ratios, up to 9:1 comport with due process). As such, the amount-in-controversy requirement is met by Plaintiff's requests for punitive damages here.

---

[6] https://www.equifax.com/personal/products/value-product-comparison/ last visited Oct. 29, 2024).

40. Specifically, Plaintiff pleads that Defendants committed the intentional tort of invasion of privacy in that the alleged disclosure of Plaintiff's and putative class members' data during the Data Incident was "extraordinarily and highly offensive because the data breached included medical and mental health treatment information." Compl. at ¶ 120. Thus, when either or both the alleged identity fraud losses or cost of credit monitoring are multiplied by four for punitive damages, the $5 million amount-in-controversy is easily met.

41. <u>Total Amount in Controversy.</u> As pled, the above alleged damages estimations exceed the $5 million amount-in-controversy threshold as required under 28 U.S.C.§ 1332(d)(2). Thus, this matter satisfies all requirements of 28 U.S.C.§ 1332, and it may be removed under CAFA.

## **EXCEPTIONS TO CAFA JURISDICTION DO NOT APPLY**

42. Courts have long held that CAFA should be "read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Proffitt v. Abbott Lab'ys,* No. 2:08-CV-151, 2008 WL 4401367, at *3 (E.D. Tenn. Sept. 23, 2008) (citation omitted). "CAFA [is] not to be read narrowly, but as a broad grant of jurisdiction in interstate class actions." *Davenport v. Lockwood, Andrews & Newnam, Inc.*, 854 F.3d 905, 910 (6th Cir. 2017) (citing S. Rep. 109-14, at 43).

43. The three exceptions relevant to CAFA jurisdiction are (1) the "local controversy exception," (2) the "home state exception"; and (3) the "discretionary remand exception." *See* 28 U.S.C. § 1332(d)(4). The local controversy and home-state exceptions require the Court to decline jurisdiction if two-thirds (sixty-seven percent) or more of all proposed plaintiff classes in the aggregate and the primary defendant are citizens of the state where the class action was originally filed. 28 U.S.C. § 1332(d)(4)(A)&(B).

14

44. "The party seeking remand, however, has the burden of showing that an exception to CAFA jurisdiction applies." *Evans v. AMISUB (SFH), Inc.*, No. 17-CV-2528-JPM-TMP, 2017 WL 9807437, at *2 (W.D. Tenn. Dec. 8, 2017) (citations omitted). Moreover, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Id.* (quoting *Dart Cherokee*, 135 S. Ct. at 554). While it is Plaintiff's burden, neither Defendants nor Plaintiff can demonstrate that CAFA's mandatory local controversy exception or home state exception applies here.

45. "The proposed class definition is crucial to the citizenship analysis, and a plaintiff who defines a class narrowly is much more likely to achieve remand." *Evans*, 2017 WL 9807437, at *2. But nowhere in her Complaint does Plaintiff plead any indicia that this is a purely local matter. *See generally* Compl. Instead, Plaintiff seeks to represent a nationwide class of individuals for claims arising out of the Data Incident. *See* Compl. at ¶ 86 ("All persons whose Private Information was compromised in the Data Breach and to whom Defendant sent a notification that their information was compromised in the Data Breach."). With approximately 3,755 putative class members who were mailed notice in 20 states, there simply is no way to know who is a citizen of which state, much less determine that two-thirds or more are citizens of Tennessee, without speaking directly to each of those thousands of individuals.

46. Significantly, where Defendants mailed notice of the Data Incident is not proof of citizenship—notwithstanding that Defendants mailed notices to addresses in 19 states other than Tennessee. To establish citizenship sufficient for diversity purposes in the Sixth Circuit, "[i]t has repeatedly been held that a party's residence in a state alone does not establish domicile." *Albury v. Daymar Colleges Grp., LLC*, No. 3:11-CV-573, 2012 WL 524480, at *4 (W.D. Ky. Feb. 15, 2012) (cleaned up). "Indeed, an individual's residence is but one of many factors courts examine

15

when determining a person's domicile. An objective showing of a person's place of residence is insufficient to establish his or her domicile without evidence of subjective intent to remain in a particular state." *Id.* (cleaned up).

47. Thus, without speaking to each putative class member, which impracticably forces a class certification analysis before removal, neither party can conclusively know the unnamed members' states of citizenship, *i.e.,* whether each unnamed class member both resides and intends to remain in Arkansas indefinitely. *See Albury*, 2012 WL 524480, at *7-9 ("Although the Plaintiffs have put forth evidence regarding the residence of the class members, residence alone is insufficient to establish citizenship. This position is supported by numerous cases addressing the CAFA exceptions.") (denying motion to remand, finding class member mailing and billing addresses insufficient to demonstrate their domicile for establishing home state or local controversy exceptions to CAFA).

48. Simply because an individual visited Defendants at some point in time in Tennessee does not mean that individual is either a Tennessee citizen or that the individual intended, at the time of removal, to remain in Tennessee permanently. Resolving all doubts in favor of CAFA jurisdiction, neither the local controversy exception nor the home state exception applies to this removal. Defendants may remove this matter to this Court.

49. The discretionary exception to CAFA, which is often referred to as the "interests of justice" exception, also does not apply here. The discretionary exception, codified under 28 U.S.C. § 1332(d)(3), provides the district court with the discretion to decline jurisdiction "over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed."

50. For the same reason that the Court cannot find that greater than two-thirds of the putative class are citizens of Tennessee without specific evidence of citizenship, it cannot find that greater than one-third of the putative class are Tennessee citizens.

## **STATE COURT NOTICE**

51. As required by 28 U.S.C. § 1446(d), Defendants are providing written notice of the filing of this Notice of Removal to Plaintiff's counsel and is filing a copy of this Notice of Removal with the Clerk of the Chancery Court for Shelby County, Tennessee. A true and correct copy of the Notice of Filing of Notice of Removal is attached to this Notice of Removal as **Exhibit C**.

## **RESERVATION OF RIGHTS AND DENIAL OF LIABILITY**

52. Nothing in this Notice of Removal is intended to be, or should be construed as, an express or implied admission by either Defendant of any fact alleged by Plaintiff; of the validity or merit of any of Plaintiff's claims and allegations; or as a limitation of any of Defendants' rights, claims, remedies, and defenses in connection with this action.

WHEREFORE, Defendants hereby remove this action from Chancery Court for the Thirteenth Judicial District, Shelby County, Tennessee, to the United States District Court for the Western District of Tennessee, so this Court may assume jurisdiction over the case as provided by law.

Dated: November 4, 2024.

Respectfully submitted,


/s/ Mary Wu Tullis
Mary Wu Tullis
Tennessee Bar No. 31339
**BAKER DONELSON**
165 Madison Ave., Ste. 2000
Memphis, Tennessee 38103
Tel.: (901) 577-8180
Email: mtullis@bakerdonelson.com

Christopher A. Wiech (*pro hac vice* forthcoming)
**BAKER & HOSTETLER LLP**
1170 Peachtree Street, Suite 2400
Atlanta, Georgia 30309
Tel.: (404) 459-0050
Fax: (404) 459-5734
Email: cwiech@bakerlaw.com

*Attorneys for Defendants Crestwyn Health Group, LLC and Acadia Healthcare Company, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that on November 4, 2024, I filed the foregoing with the Clerk of Court and served the foregoing via electronic mail to the following:

J. Gerard Stranch, IV (No. 23045)
Grayson Wells (No. 039658)
Miles Schiller (No. 041531)
STRANCH, JENNINGS & GARVEY, PLLC
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel : (615) 254-8801
gstranch@stranchlaw.com
gwells@stranchlaw.com
mschiller@stranchlaw.com

*Attorneys for Plaintiff and Proposed Class*

                                              */s/* Mary Wu Tullis
                                              Mary Wu Tullis