# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| YVETTE OWENS, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case No. 2:24-cv-02853-MSN-atc |
| | JURY DEMAND |
| CRESTWYN HEALTH GROUP, LLC, d/b/a CRESTWYN BEHAVIORAL HEALTH, and ACADIA HEALTHCARE COMPANY, INC., | |
| Defendants. | |

## ORDER GRANTING PLAINTIFF'S MOTION TO REMAND
## AND DIRECTING CLERK TO CLOSE CASE

Before the Court is Plaintiff Yvette Owens' Motion to Remand (ECF No. 11, "Motion"). Defendants Crestwyn Health Group, LLC and Acadia Healthcare Company, Inc. filed a Response in Opposition (ECF No. 16). For the reasons stated below, Plaintiff's Motion is **GRANTED**.

## BACKGROUND

On September 27, 2024, Plaintiff filed a class action complaint in the Chancery Court for Shelby County, Tennessee, against Defendants seeking redress for alleged failures to implement adequate cybersecurity measures that resulted in a breach between January 11, 2024, and January 15, 2024. (ECF No. 1-1.) On November 4, 2024, Defendants removed the action to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). (ECF No. 1.) Plaintiff subsequently filed the instant Motion to Remand, arguing that this case falls within CAFA's "home state" and "local controversy" exceptions. (ECF No. 11.)

There is no dispute that this action meets the basic jurisdictional requirements under CAFA: minimal diversity exists, more than 100 putative class members are alleged, and the amount in controversy exceeds $5 million. (ECF No. 11; ECF No. 16 at PageID 134.)

## **LEGAL STANDARD**

The Class Action Fairness Act of 2005 vests federal courts with original jurisdiction over class actions where the amount in controversy exceeds $5,000,000, the class contains at least 100 members, and at least one class member is minimally diverse from any defendant. 28 U.S.C. § 1332(d); *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 84-85 (2014). Such cases are removable to federal court pursuant to 28 U.S.C. § 1441.

Determining whether a court has jurisdiction over a class action removed pursuant to CAFA involves a two-step process. *Dean v. Draughons Junior Coll., Inc.*, No. 3:12-cv-0157, 2012 U.S. Dist. LEXIS 85583, at *8 (M.D. Tenn. June 20, 2012). First, the removing defendant has the burden of showing that CAFA's basic jurisdictional requirements have been met. *Id.* (citing *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 404-05 (6th Cir. 2007)). Second, if the basic jurisdictional requirements have been met, the burden shifts to the plaintiff to establish that an exception under 28 U.S.C. § 1332(d) applies. *Id.*; *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 698 (2003) ("[W]henever the subject matter of an action qualifies it for removal, the burden is on a plaintiff to find an express exception.").

CAFA requires district courts to decline jurisdiction if one of the narrow statutory exceptions applies. *Mason v. Lockwood, Andrews & Newnam, P.C.*, 842 F.3d 383, 394 (6th Cir. 2016). The home state and local controversy exceptions "are designed to draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to that state." *Doe v. Christ Hosp.*,

2

No. 1:23-cv-27, 2023 U.S. Dist. LEXIS 129792, at *8 (S.D. Ohio July 26, 2023) (citing *Hart v. FedEx Ground Package Sys.*, 457 F.3d 675, 682 (7th Cir. 2006)). If the elements of either exception are met, the court "shall decline to exercise jurisdiction." 28 U.S.C. § 1332(d)(4).

The "local controversy exception" requires a district court to decline jurisdiction if: (1) more than two-thirds of the proposed class members are citizens of the state in which the action was filed; (2) at least one defendant from whom significant relief is sought and whose conduct forms a significant basis for the claim is a citizen of the state; (3) the principal injuries resulting from the conduct occurred in the state; and (4) no other similar class action was filed against any defendant within the last three years. 28 U.S.C. §1332(d)(4)(A).

Likewise, the "home state exception" requires a district court to decline jurisdiction if "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B).

The party seeking remand bears the burden of establishing each element of the exception by a preponderance of the evidence. *Mason*, 842 F.3d at 388. State citizenship equals domicile. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990). A class member is domiciled where they reside and intend to remain; however, there is a rebuttable presumption that each class member intends to remain where they currently reside. *Mason*, 842 F.3d at 390. The defendant still has the opportunity to rebut that presumption with evidence that the class members do not intend to remain. *Id.* at 395. For example, the defendant can show that the class contains a "large number of college students, military personnel, owners of second homes, or other temporary residents…." *Id.*

3

The Sixth Circuit describes the domicile inquiry as not "exceptionally difficult" but "practical and reasonable." *Id.* at 392. In other words, "[e]xact counts of class members are not required for the Court to evaluate" the exception's applicability. *Middendorf v. W. Chester Hosp., L.L.C.*, 233 F. Supp. 3d 615, 620-21 (S.D. Ohio 2017). Thus, to remand under either the "home state" or "local controversy" exceptions, a plaintiff must show that it is more likely than not that at least two-thirds of the class members and a defendant are citizens of the state where the action was filed. *Wiggins v. Daymar Colls. Grp., LLC*, No. 5:11-cv-36-R, 2012 U.S. Dist. LEXIS 34350, at *8-9 (W.D. Ky. Mar. 13, 2012) (collecting cases).

## DISCUSSION

The parties do not dispute that Defendants are both citizens of Tennessee. Additionally, there is no dispute that the principal injuries resulting from the alleged conduct occurred in Tennessee, as Crestwyn operates exclusively in Memphis, Tennessee. The parties also do not contest that no other similar class action was filed against Defendants within the last three years. Therefore, the Court's analysis focuses on whether two-thirds or more of the putative class members are citizens of Tennessee. If two-thirds or more of the putative class members are indeed citizens of Tennessee, then either the "home state exception" or the "local controversy exception" would apply, and the Court would be required to decline jurisdiction and remand the case to state court.[1]

---

[1] The local controversy exception requires "greater than two-thirds" of class members to be forum state citizens, while the homes state exception requires "two-thirds or more." 28 U.S.C. § 1332(d)(4)(A)–(b); *Evans v. AMISUB, Inc.*, No. 17-cv-2528-JPM-tmp, 2017 U.S. Dist. LEXIS 227813, at *8 n.5 (W.D. Tenn. Dec. 8, 2017).

A.     **Evidence of Class Member Citizenship**

The Court notes that there has been no formal discovery in this case. Recognizing this limitation, Plaintiff invited Defendants to provide data regarding class member locations, stating: "Plaintiff invites Defendants to attach a breakdown of the Class Members by state, supported by a sworn declaration, to its reply brief." (ECF No. 11 at PageID 122.)

Defendants accepted this invitation and provided statistical evidence regarding class composition. (ECF No. 16-1.) According to the Declaration of Elizabeth Baradi submitted by Defendants, notification letters regarding the data breach were sent to approximately 3,753 individuals (ECF No. 16-1 at PageID 143.) After reviewing available data and running the population through the National Change of Address Database, Defendants mailed notification letters to approximately 3,046 persons. (*Id*.) Of those individuals, approximately 2,687 had mailing addresses in Tennessee, with 600 of those addresses ultimately being undeliverable.[2] (*Id.* at PageID 144.)

Defendants argue that only 2,087 notices out of 3,753 were delivered to mailing addresses in Tennessee, representing 56% of the putative class—below the two-thirds threshold required for the CAFA exceptions. (ECF No. 16 at PageID 138.) The Court acknowledges that Plaintiff, as the party seeking remand, bears the burden of establishing each element of the exception by a preponderance of the evidence. However, the Court finds that the residence data itself, the 72% Tennessee addresses, is the more appropriate starting point for the citizenship analysis under *Mason*, rather than focusing solely on successfully delivered mail. This approach recognizes the

---

[2] The Deceleration provides no information about how many of the 359 non-Tennessee addresses were also undeliverable, leaving a significant gap in the deliverability analysis.

presumptive relationship between residence and domicile, while acknowledging that undeliverable mail does not necessarily indicate non-Tennessee citizenship.

### B. Residence as a Presumption of Citizenship Under *Mason*

In *Mason*, the Sixth Circuit established that residence creates a rebuttable presumption of domicile for CAFA exception purposes. 842 F.3d at 390. Here, the evidence shows that 72% of all individuals who received notification letters, 2,687 of 3,046, had Tennessee mailing addresses. (ECF No. 16-1 at PageID 144.)

The Court finds this percentage sufficient to establish a presumption that at least two-thirds of the class members are citizens of Tennessee. The fact that 600 Tennessee addresses were undeliverable does not rebut this presumption. It is important to emphasize that undeliverable addresses do not necessarily indicate non-Tennessee citizenship. This is particularly true when Defendants themselves acknowledge they "provide care to unhoused individuals, which likely accounts for the number of individuals without mailing addresses available to provide direct mail notice of the Incident." (ECF No. 16 at PageID 135.) The Court finds this statement from Defendants supports the inference that many undeliverable addresses may well belong to Tennessee citizens who are unhoused or have otherwise changed residence without updating their address information.

The Sixth Circuit noted in *Mason* that courts may consider "other attributes of plaintiffs' proposed class that bolster the inference [of citizenship]." 842 F.3d at 395. Here, several factors strengthen the presumption that at least two-thirds of class members are Tennessee citizens: (1) Crestwyn is a behavioral health facility located exclusively in Memphis, Tennessee; (2) Crestwyn markets itself as "Memphis, Tennessee's preferred acute inpatient mental health hospital"; (3) Crestwyn emphasized the importance of "seeking mental health treatment close to home"; (4)

Crestwyn has no locations outside of Tennessee, and all of its current job opening are in Tennessee; (5) Crestwyn's mission statement indicates it serves areas around Germantown, Tennessee. (ECF No. 11 at PageID 120–21.)

The Court finds these factors, combined with the residence data, establish by a preponderance of the evidence that at least two-thirds of the putative class members are citizens of Tennessee. Defendants have not presented sufficient evidence to rebut this presumption. While Defendants note that notification letters were sent to addresses in 24 states (ECF No. 16-1 at PageID 144), the vast majority—approximately 88%—were sent to Tennessee addresses, consistent with Crestwnyn's focus on serving the Memphis area. This percentage is drawn from Exhibit A to the Baradi Declaration, which provides a state-by-state breakdown of all notification letters sent after completion of the National Change of Address process. (ECF No. 16-1 at PageID 145–46.) Of the 3,046 total letters mailed, 2,687 were directed to Tennessee addresses.

This data reinforces the Court's conclusion under the Sixth Circuit's guidance that the citizenship inquiry under CAFA should be "practical and reasonable" rather than "exceptionally difficult." *Mason*, 842 F.3d at 392. Courts are permitted to make "reasonable assumptions" about class citizenship without requiring "exact counts." *Doe v. Christ Hosp.*, No. 1:23-cv-27, 2023 U.S. Dist. LEXIS 129792, at *10 (S.D. Ohio July 26, 2023) (citing *Williams v. Homeland Ins. Co.*, 657 F.3d 287, 291 (5th Cir. 2011); *Middendorf*, 233 F. Supp. 3d at 620-21. Based on the mailing data and the fact that Crestwyn operates solely within Tennessee, the Court finds it reasonable to infer that the class is composed primarily of Tennessee citizens and that the two-thirds threshold for the CAFA exceptions has been satisfied. Accordingly, the Court concludes that Defendants have not rebutted the presumption of Tennessee citizenship.

## **CONCLUSION**

For the reasons stated above, the Court finds that Plaintiff has established by a preponderance of the evidence that at least two-thirds of the putative class members are citizens of Tennessee. Accordingly, both the home state exception and the local controversy exception to CAFA jurisdiction apply, and the Court "shall decline to exercise jurisdiction" pursuant to 28 U.S.C. § 1332(d)(4)(A)–(B).[3]

Plaintiff's Motion to Remand (ECF No. 11) is **GRANTED**. The case is hereby **REMANDED** to the Chancery Court for Shelby County, Tennessee. The Clerk is **DIRECTED** to close this case without an entry of judgment.

**IT IS SO ORDERED**, this 21st day of August, 2025.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE

---

[3] Because the Court finds that both the home state and local controversy exceptions apply, it need not reach Plaintiff's alternative request for discretionary remand under 28 U.S.C. § 1332(d)(3). That said, the nature of the class and the alleged harm appear to be overwhelmingly local.